IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **SUPERPROTEIN STUDIOS INC.,** Plaintiff, *versus* **INFERNOZILLA, LLC,** Defendant. | Civil Action No. 3:25-cv-2889 **JURY TRIAL DEMANDED** |

PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

TO THE HONORABLE COURT:

Plaintiff SuperPROTEIN Studios Inc. ("SuperPROTEIN") brings this action against Defendant Infernozilla, LLC ("Infernozilla") for systematic breaches of contractual obligations, false designation of origin under the Lanham Act, deceptive trade practices, conversion of confidential materials, and related claims arising from Infernozilla's unauthorized misrepresentation of itself as SuperPROTEIN's publisher and misappropriation of confidential game development materials.

I.  PARTIES

1.  SuperPROTEIN Studios Inc. is a corporation organized and existing under the laws of Washington. SuperPROTEIN is an independent video game development studio that develops and publishes interactive entertainment software.

2.  Infernozilla, LLC is a limited liability company organized and existing under the laws of Texas, with its principal place of business at 1943 Canada Dr., Dallas, TX 75212.

Infernozilla operates as a marketing and booth management services company for video game developers.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the Lanham Act, 15 U.S.C. § 1125(a), and pursuant to 28 U.S.C. § 1367 for supplemental jurisdiction over related state law claims.

4. This Court has personal jurisdiction over Infernozilla because it is a Texas limited liability company with its principal place of business in this District, and the conduct giving rise to this action occurred substantially within this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant resides in this District and a substantial part of the events giving rise to the claims occurred in this District.

## III. FACTUAL BACKGROUND

### A. The Contractual Relationship and Scope of Services

6. On April 18, 2025, SuperPROTEIN and Infernozilla entered into a Community & Marketing Agreement (the "Marketing Agreement") whereby Infernozilla would provide social media marketing services for SuperPROTEIN's video game "Unmasked Truths: Shattered Dreams."

7. The Marketing Agreement implicitly required pre-approval for all content publications. Specifically, Exhibit A of the Marketing Agreement mandated that Infernozilla consult SuperProtein before publishing any marketing content related to SuperPROTEIN's

products and on August 18, 2025 the Parties acknowledged the clear expectation that SuperPROTEIN must pre-approve all content publications.

8. Section 2 of the Marketing Agreement explicitly acknowledged SuperPROTEIN Studios' sole ownership rights to all intellectual property, establishing the parties' relationship as developer-client and service provider, not publisher-developer.

9. On June 7, 2025, the parties entered into a Gamescom Megabooth Agreement (the "Gamescom Agreement") whereby Infernozilla would provide professional booth management services at the Gamescom 2025 convention for a fee of $15,000.

10. Section 5 of the Gamescom Agreement established strict confidentiality obligations, requiring Infernozilla to maintain the confidentiality of all SuperPROTEIN materials and information received in connection with the agreement.

11. Both agreements contemplated a service provider relationship whereby Infernozilla would provide marketing and booth services while SuperPROTEIN retained all publishing rights and intellectual property ownership.

### B. Unauthorized Publications and Contractual Breaches

12. On August 18, 2025, Infernozilla published social media content related to SuperPROTEIN's game without obtaining the required pre-approval mandated by Exhibit A of the Marketing Agreement.

13. On September 10, 2025, Infernozilla again published social media content without obtaining required pre-approval, demonstrating a pattern of willful disregard for contractual obligations.

14. Infernozilla's team had previously acknowledged the pre-approval requirement during communications with SuperPROTEIN, making these violations knowing and intentional breaches of express contractual terms.

**Plaintiff's Original Verified Complaint**                                                **Page 3 of 13**

15. These unauthorized publications occurred despite SuperPROTEIN's clear communications regarding the approval process and Infernozilla's express acknowledgment of these requirements.

### C. Misappropriation of Confidential Materials and False Publisher Claims

16. During the Gamescom convention held August 20-24, 2025, Infernozilla publicly displayed an internal game build explicitly marked "for USK Rating Only" that was provided to Infernozilla solely for internal informational purposes under strict confidentiality.

17. The confidential build was never intended for public display and contained defects that irreparably undermined SuperPROTEIN's critical first market impression at gaming's premier international venue.

18. Infernozilla incorporated copyrighted character sprites and other SuperPROTEIN intellectual property into its booth materials and promotional displays without permission, license, or authorization.

19. These copyrighted materials were arranged alongside Infernozilla's own branding and logo in a manner designed to suggest association with and promote Infernozilla's own business interests, including its publishing arm "IZilla Games."

20. Infernozilla falsely represented itself as SuperPROTEIN's publisher in official Gamescom directory listings, contradicting the parties' actual service provider relationship and creating marketplace confusion.

21. On or about August 24, 2025, Infernozilla's CEO published LinkedIn posts promoting the company's publishing arm "IZilla Games" while simultaneously managing SuperPROTEIN's booth, suggesting a false publisher relationship.

### D. Professional Service Failures and Reputational Harm

22. The Gamescom Agreement contemplated professional booth management services commensurate with the $15,000 fee paid, including knowledgeable staff capable of engaging potential business partners and investors.

23. A secret shopper evaluation documented that Infernozilla's booth staff lacked basic product knowledge, could not explain fundamental game features, and failed to engage potential business partners in a professional manner.

24. These service failures occurred at SuperPROTEIN's critical market debut at Gamescom, resulting in lost business opportunities and reputational harm during the industry's most important networking event.

25. The false publisher claims and poor service delivery have complicated SuperPROTEIN's SAG-AFTRA compliance efforts and created ongoing marketplace confusion requiring extensive corrective measures.

26. Further, after objection by SuperPROTEIN as to the false publisher relationship, Infernozilla completely removed, without notice, SuperPROTEIN from its official Gamescom directory listings—which negated the entire value of the Gamescom Agreement and caused massive reputational damage.

27. For example, SuperPROTEIN has a pending application under the program Epic MegaGrants, worth an estimated $150k in grants. By completely removing SuperPROTEIN from the Gamescom directory, Infernozilla has rendered it impossible for Epic MegaGrants to validate key components of SuperPROTEIN's pending application.

### E. Ongoing Harm and Evidence Destruction Concerns

28. SuperPROTEIN served Infernozilla with a litigation hold notice on September 19, 2025, requiring preservation of all relevant documents and communications.

29. Despite the litigation hold, on October 21, 2025, Infernozilla sent SuperPROTEIN an "offboarding checklist" threatening to complete account access removal and archive project materials by October 27, 2025, with or without SuperPROTEIN's consent.

30. This threatened destruction of evidence includes shared Google Drive folders, Discord communications, and other materials critical to resolving the claims in this litigation.

31. The false publisher representations continue to cause ongoing marketplace confusion and reputational harm, requiring immediate corrective action to prevent further damage to SuperPROTEIN's business relationships and commercial prospects.

## IV. CAUSES OF ACTION

### Count I – False Designation of Origin (15 U.S.C. § 1125(a))

32. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

33. Infernozilla used false designations of origin and made false and misleading representations of fact in commercial advertising and promotion that are likely to cause confusion as to the origin, sponsorship, or approval of SuperPROTEIN's goods.

34. Specifically, Infernozilla falsely designated itself as SuperPROTEIN's publisher in Gamescom directory listings and promotional materials, creating a likelihood of confusion regarding the source and sponsorship of SuperPROTEIN's video game products.

35. Infernozilla's false publisher designations were made in connection with the promotion and advertisement of services in interstate commerce, specifically at the international Gamescom convention and through online promotional materials.

36. These false designations are likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of SuperPROTEIN's goods and services among consumers, industry participants, and potential business partners.

37. As a direct and proximate result of Infernozilla's violations of 15 U.S.C. § 1125(a), SuperPROTEIN has suffered and continues to suffer irreparable harm and monetary damages, including but not limited to loss of business opportunities, reputational harm, and costs of corrective measures.

### Count II – Deceptive Trade Practices (Texas Business & Commerce Code Ch. 17)

38. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

39. Infernozilla engaged in false, misleading, and deceptive acts and practices in the conduct of trade and commerce by falsely representing itself as SuperPROTEIN's publisher.

40. Infernozilla's conduct constitutes deceptive trade practices under Texas Business & Commerce Code § 17.46(b), including representing that services have characteristics, benefits, or qualities that they do not have, and representing that services are of a particular standard or quality when they are not.

41. Infernozilla acted knowingly in making these false representations, having actual awareness of the falsity and deceptive nature of its publisher claims.

42. SuperPROTEIN justifiably relied on Infernozilla's representations regarding the scope and nature of services to be provided under the agreements.

43. As a producing cause of SuperPROTEIN's economic damages, Infernozilla's deceptive trade practices have caused actual damages in excess of $150,000, making SuperPROTEIN entitled to treble damages, attorney's fees, and costs under Texas Business & Commerce Code § 17.50.

**Count III – Breach of Contract (Marketing Agreement)**

44. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

45. SuperPROTEIN and Infernozilla entered into a valid and enforceable Marketing Agreement on April 18, 2025.

46. SuperPROTEIN performed all conditions precedent and substantially performed all of its obligations under the Marketing Agreement.

47. Infernozilla materially breached the Marketing Agreement by: (a) publishing content on August 18 and September 10, 2025, without obtaining required pre-approval under Exhibit A; (b) misrepresenting its relationship with SuperPROTEIN in violation of Section 2; and (c) failing to maintain confidentiality as required under Section 5.

48. As a direct and proximate result of Infernozilla's material breaches, SuperPROTEIN has been damaged in an amount to be proven at trial, but not less than $150,000.

**Count IV – Breach of Contract (Gamescom Agreement)**

49. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

50. SuperPROTEIN and Infernozilla entered into a valid and enforceable Gamescom Agreement on June 7, 2025.

51. SuperPROTEIN performed all conditions precedent and substantially performed all of its obligations under the Gamescom Agreement, including payment of the $15,000 fee.

52. Infernozilla materially breached the Gamescom Agreement by: (a) publicly displaying confidential materials marked "for USK Rating Only" in violation of Section 5; (b) failing to provide professional booth management services; and (c) misrepresenting itself as

SuperPROTEIN's publisher in convention materials; and (d) deleting SuperPROTEIN from the Gamescom directory.

53. As a direct and proximate result of Infernozilla's material breaches, SuperPROTEIN has been damaged in an amount to be proven at trial, including the $15,000 fee paid and consequential damages of $150,000 from the failed market debut.

### Count V – Conversion and Civil Theft
### (Texas Civil Practice & Remedies Code § 134)

54. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

55. SuperPROTEIN is the owner of copyrighted character sprites, game builds, and other confidential materials provided to Infernozilla under the agreements.

56. Infernozilla unlawfully appropriated SuperPROTEIN's confidential materials by incorporating copyrighted sprites into booth displays and using confidential game builds for public exhibition without authorization.

57. Infernozilla's unauthorized use of these materials deprived SuperPROTEIN of their exclusive use and control, constituting conversion under Texas law.

58. Infernozilla's conduct constitutes theft under Texas Civil Practice & Remedies Code § 134, entitling SuperPROTEIN to treble damages and attorney's fees.

### Count VI – Business Disparagement

59. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

60. Infernozilla published false statements regarding SuperPROTEIN's publishing relationship and business operations through directory listings and promotional materials.

61. These false statements were made with knowledge of their falsity or with reckless disregard for the truth, with intent to cause harm to SuperPROTEIN's business reputation.

62. The false statements were published to third parties and have caused special damages to SuperPROTEIN's business, including lost partnerships and the need for costly corrective measures.

**Count VII – Fraudulent Inducement**

63. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

64. Upon information and belief, Infernozilla made material misrepresentations regarding its capabilities, intentions, and business practices to induce SuperPROTEIN to enter into the agreements.

65. These misrepresentations were made with knowledge of their falsity and with intent to deceive SuperPROTEIN into entering into the contractual relationships.

66. SuperPROTEIN justifiably relied on these misrepresentations in deciding to enter into the agreements, and has suffered damages as a proximate result of such reliance.

**Count VIII – Unjust Enrichment**

67. SuperPROTEIN realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

68. Infernozilla has been unjustly enriched through its unauthorized use of SuperPROTEIN's confidential materials and false publisher representations to promote its own business interests.

69. Infernozilla received benefits from Gamescom exposure and enhanced reputation while materially breaching its contractual obligations to SuperPROTEIN.

70. It would be inequitable to allow Infernozilla to retain these benefits without providing just compensation to SuperPROTEIN.

## V. PRAYER FOR RELIEF

WHEREFORE, SuperPROTEIN Studios Inc. respectfully requests that this Court:

A. Enter judgment in favor of SuperPROTEIN and against Infernozilla on all causes of action;

B. Award actual damages in an amount to be proven at trial, but not less than $150,000;

C. Award treble damages under the Texas Deceptive Trade Practices Act and Texas Civil Practice & Remedies Code § 134;

D. Award attorney's fees and costs as provided by law;

E. Enter permanent injunctive relief prohibiting Infernozilla from further misrepresenting its relationship with SuperPROTEIN and requiring corrective measures;

F. Award prejudgment and postjudgment interest;

G. Award such other and further relief as the Court deems just and proper.

## VI. JURY TRIAL DEMAND

SuperPROTEIN Studios Inc. hereby demands a trial by jury on all issues so triable.

/Brandon J. Leavitt/
**Brandon James Leavitt**
TX Bar No: 24078841

**Leavitt Eldredge Law Firm**
4204 S.W. Green Oaks Blvd. Suite 140
Arlington, TX 76017

(214) 727-2055
brandon@uslawpros.com

**ATTORNEY FOR PLAINTIFF**

## VERIFICATION

STATE OF WISCONSON   §
COUNTY OF Eau Claire   §

    Before me, the undersigned authority, personally appeared **Jamie Johns**, who, being duly sworn, stated that Jamie Johns is a director and authorized representative of **SuperPROTEIN Studios Inc.**; has read the foregoing Original Complaint; and that the facts stated therein are within Jamie Johns's personal knowledge and are true and correct.

_____
**Jamie Johns**


Sworn to and subscribed before me on this 24th day of October, 2025.

_____
**Notary Public, State of Wisconson**
Lesley J. Schlattweiler

My Commission Expires:

3/27/2037

[Notary seal: LESLEY J SCHLATTWEILER, NOTARY PUBLIC, STATE OF WISCONSIN]